UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ERIEK Z. NICKSON,<br>    plaintiff | )<br>)<br>) |
| v. | )  Civil No. _____ |
| UNITED STATES STEEL CORPORATION,<br>    defendant | )<br>)<br>) |

## Complaint

**A.    Preliminary statement**

1. Eriek Z. Nickson (Nickson), the plaintiff, was employed by United States Steel Corporation (USSC) Gary Works, as a member of the United Steelworkers International Union, Local 1066, from April 8, 1996 until his discharge in June 2019. During the period relevant to this case, Nickson was assigned to the Maintenance Services & Utilities department, as a Labor Grade 2 Utility Technician, at the USSC-Gary Works.

**B.    Jurisdiction**

2. Nickson filed a timely charge of discrimination (Charge No. 470-2020-00460) with the Equal Employment Opportunity Commission (EEOC) in November 2019, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The EEOC issued a "Dismissal and Notice of Rights" (attached) to Nickson, which indicates it was mailed to him on November 19, 2019.

3. Nickson states claims based on Title VII (race and retaliation) and 42 U.S.C. § 1981 (race and retaliation). Therefore, this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(4), and 42 U.S.C. § 2000e-5(f)(1).

### C. Parties

4. Nickson is an African American male, a former employee of the defendant, and a resident of Lake County Indiana.

5. Defendant USSC is an "employer" as defined in Title VII, 42 U.S.C. § 2000e(a). Its principal office is located at 600 Grant Street, Pittsburgh, PA, and it operates a facility (Gary Works) in Gary, Indiana, where the plaintiff was employed.

### D. Factual allegations

6. Until mid-2017, Nickson had an exemplary work record with USSC, with only a few minor infractions. However, beginning in late 2016, a white co-worker, Matt Novak, created a racially hostile work environment for Nickson. This included a series of actions, including Novak placing the word "nigga," on a sticker attached to Nickson's locker, in November 2017 during the election campaign for a union position.

7. On November 8, 2017, Nickson notified his direct supervisor, Mark Shoemaker, of the locker incident and expressed his concern that the harassment could lead to something very serious. Shoemaker acknowledged the report, but admittedly did nothing about it.

8. Several days later, on November 15, 2017, Novak confronted Nickson in the lunchroom, placed his finger in Nickson's face, called him a "mother fucker," and indicated he was not pleased with Nickson's comments during a union meeting a few days earlier. Other employees in the lunchroom physically restrained Novak.

9. Nearly a year later, on October 31, 2018, Nickson was driving a company vehicle and drove past Novak, who yelled obscenities at Nickson and "gave him the finger." Within five minutes, Nickson was surrounded by four plant security cars and five security officers. Around the same time, Mr. Shoemaker and a company safety representative, Rick More arrived.

10. Later on October 31, 2018, Novak confronted Nickson in a warehouse, called him a "fucking bitch" and a "fucking punk," and physically attacked Nickson, knocking him to the ground. Nickson was able to escape from the warehouse. Nickson reported this incident to the Gary Police Department around December 11, 2018.

11. On December 3, 2018, plant security escorted Nickson to the Labor Relations office, where he was interrogated regarding the incident on October 31, 2018. At the conclusion of the interrogation, Nickson was told to give his identification badge to security, *i.e.,* he was locked out of the plant and discharged. Instead of addressing the racially motivated actions of Novak in a timely manner, the defendant enabled Novak's racial harassment and when it finally took action, it punished the plaintiff as well.

12. After his discharge, Nickson filed an application for unemployment compensation, which was initially denied, but the denial was reversed on appeal with the administrative law judge deciding, in an order dated February 13, 2019, that Nickson "only appl[ied] physical force in self-defense" and he had a "reasonable belief that he was in imminent danger of bodily harm."

13. Nickson grieved his discharge and after several steps in the grievance process, he was persuaded by Company and Union officials that his best, and possibly only, chance of returning to work was to sign a Company-prepared "last chance agreement" (LCA), dated April 25, 2019, to remain in effect for three (3) years. Nickson protested the terms of the LCA, but reluctantly signed it. Around the same time, Novak returned to work pursuant to the LCA.

14. Within two (2) months of signing the LCA, Nickson was discharged for an alleged violation of the LCA and a selectively-enforced safety rule on June 16, 2019, *i.e.,* crossing a conveyor belt, which was not in operation, without hitting a nearby switch, shortly after a crane had dropped a coil on his truck causing damage to the truck.

15. Again, Nickson filed an application for unemployment compensation, which was initially denied, but the denial was reversed on appeal with the administrative law judge deciding, in an order dated October 18, 2019, that Nickson "did not knowingly ignore the lock out procedure [because] the poor performance of the crane operator in causing damage to his truck caused [Nickson] to be so distracted that he forgot about the lock out procedure and violated it without his knowledge that he was doing so."

16. The adverse employment actions described above were taken because of the plaintiff's race and in retaliation for the plaintiff's complaints of race discrimination and retaliation.

17. As a result of the challenged actions of the defendant, Nickson lost his job and the accompanying wages and benefits, incurred mental and emotional distress, was subjected to a hostile work environment, and lost employment opportunities. The challenged actions of the defendant and its agents were intentional and taken with reckless indifference to the federally protected rights of the plaintiff.

E.  **Legal claims**

18. The challenged actions of the defendant violate Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, insofar as they are based on race and retaliation.

F.  **Relief**

Wherefore, the plaintiff requests:

a. a declaratory judgment determining that the challenged actions of the defendant violate federal law, as set out in ¶ 18, above;

b. equitable relief in the form of lost wages and benefits, correction of job assignments and employment records, and enjoining the challenged discrimination and harassment;

c. compensatory and punitive damages, in an amount to be determined by the jury;

d. costs, including attorney fees, pursuant to 42 U.S.C. §§ 2000e-5(k), and 42 U.S.C. § 1988; and

f. pursuant to Rule 54(c), FRCP, all other appropriate relief.

**G.     Jury demand**

Pursuant to Rule 38(b), FRCP, the plaintiff demands trial by jury.

/s/ Ivan E. Bodensteiner
Ivan E. Bodensteiner - #3528-64
Attorney for Plaintiff
7 Napoleon Street
Valparaiso, IN 46383
(219) 242-3058
ieblaw68@gmail.com

EEOC Form 161 (11/16)       **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Eriek Z. Nickson
7239 Bracken Parkway
Hobart, IN 46342

From: Indianapolis District Office
101 West Ohio Street
Suite 1900
Indianapolis, IN 46204

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

EEOC Charge No.: 470-2020-00460
EEOC Representative: Michelle D. Ware, Enforcement Supervisor
Telephone No.: (463) 999-1184

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Michelle Eisele,
District Director

NOV 1 9 2019
(Date Mailed)

Enclosures(s)

cc: Kenneth Bauer
Coordinator – Labor Relations Department
UNITED STATES STEEL CORPORATION
One North Broadway Ms-99 K-D
Gary, IN 46402